## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GERALD C. KELL,                          )
                                         )
        Plaintiff,                    )
                                         )
        v.                            )    Case No. 1:07-cv-01402-RJL
                                         )
CAREFIRST BLUECROSS BLUESHIELD,          )
                                         )
        Defendant.                    )
                                         )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

In this action, plaintiff seeks to recover medical benefits to which he is entitled under a health insurance system created by Congress for federal employees such as himself. Further, plaintiff requests damages for defendant's persistent pattern of actions designed to prevent plaintiff from obtaining those benefits by blocking his access to that system.

In moving to dismiss this case, defendant claims the protection of a preemption provision that is a part of the statutory scheme creating the health insurance system. Defendant argues that, in creating the system, Congress intended to bring uniformity to the administration of federal employees' health insurance by limiting the employees' access to the courts. Defendant ignores, however, that the uniformity is for the protection of the beneficiaries as well as the insurers in that it gives the employees an administrative venue in which to pursue their claims. Having abrogated plaintiff's ability to participate in the uniform system, defendant cannot now be heard



to assert a shield to this suit that the system might otherwise have afforded it. Defendant's motion to dismiss should, therefore, be denied.

## STANDARD TO BE APPLIED

Though defendant has moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, defendant has neither stated nor acknowledged the applicability of the standard that this court is to apply in assessing the motion. Nonetheless, the court must be mindful of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v Gibson, 355 U.S. 41, 45-46 (1957). Moreover, the court is to "accept as true all of the complaint's factual allegations, giving [plaintiff] the benefit of all inferences that can be derived from the facts alleged." Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996) (citations and internal quotations omitted). Plaintiff, therefore, turns to those facts and the inferences to be derived from them.

## STATEMENT OF FACTS

At all times relevant to this case, plaintiff, a resident of the District of Columbia, has been an insured member of a plan of health insurance known as the Federal Employee Program BlueCross BlueShield Service Benefit Plan ("Federal Employee Program," "Service Benefit Plan," or "plan") under which defendant is liable to pay plaintiff's expenses for medical services covered under the plan. Amended Complaint, ¶ 4; Memorandum in Support of Defendant's Motion to Dismiss ("Def. Mem") at 2. On June 24, 2004, plaintiff began a course of inpatient treatment at Father Martin's Ashley ("Ashley"), a treatment facility located in Havre de Grace,

2

Maryland. Complaint, ¶ 5. That treatment was appropriate to treat plaintiff's condition, was consistent with standards of good medical practice in the United States, was not primarily for the personal comfort or convenience of plaintiff, was not part of or associated with scholastic education or vocational training of plaintiff, and could not be provided safely on an outpatient basis. Amended Complaint, ¶ 5. The treatment, therefore, was medically necessary and met all of the criteria for coverage under the Service Benefit Plan. See letter dated June 28, 2004, from defendant to Ashley and stamped by Ashley "Received Jul 7 2004," Exhibit 1 hereto at 1.[1]

On the day that plaintiff began his treatment, Ashley, acting on plaintiff's behalf, requested that defendant authorize payment for the treatment that plaintiff was to receive. Amended Complaint, ¶ 6; Exhibit 1 at 1. Four days later, on June 28, 2004, defendant sent a letter to Ashley, containing an "initial decision" refusing to authorize payment for plaintiff's inpatient treatment. Exhibit 1 at 1. That initial decision was that plaintiff's treatment was not covered by the plan because the treatment was not "appropriate to prevent, diagnose or treat [plaintiff's] condition" and because the treatment could "be provided safely on an outpatient basis." Id. Defendant's letter described the initial decision as a part of a "review process" and advised Ashley, "If you need assistance in the future, your Provider Services representative is available to help you at [telephone number]." Id. at 2.

Plaintiff completed his course of treatment at Ashley on July 22, 2004. Amended Complaint, ¶ 8. On September 20, 2004, continuing to act on plaintiff's behalf, Ashley sent a

---

[1]  Defendant acknowledges that, in resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court can consider documents referred to in the complaint. Def. Mem. at 3, n. 1. Plaintiff references the letter stamped July 7, 2004, in paragraph 7 of the complaint. Similarly, all other exhibits referenced herein are referred to in the complaint.

3

letter to defendant, enclosing plaintiff's medical records and appealing defendant's initial

decision refusing to authorize payment for plaintiff's treatment. Amended Complaint, ¶ 9, and

Exhibit 2 hereto. In that letter, Ashley advised defendant that Ashley was "following the appeals

procedures through to continue our role as both managers and patient advocates." Exhibit 2. By

a separate letter, also sent on September 20, 2004, Ashley forwarded to defendant additional

information and medical records to further support plaintiff's request for payment for his

treatment at Ashley. Amended Complaint, ¶ 10, and Exhibit 3 hereto. Both of the September 20,

2004, letters were received by defendant on September 22, 2004. Amended Complaint, ¶ 11.

      After submitting the appeal of defendant's refusal to authorize payment for plaintiff's

treatment, and medical records and other information supporting that appeal, Ashley continued to

communicate with defendant, on plaintiff's behalf, regarding the status of plaintiff's claim and

the appeal. Amended Complaint, ¶ 13. Those communications continued from the date of

submission of the appeal, September 20, 2004, for more than two years, until October 17, 2006.

In response to those communications, defendant did not provide any information other than to

advise Ashley that plaintiff's claim and appeal remained pending. Id. Indeed, during that period,

on April 4, 2005, defendant addressed to Ashley a document captioned "Federal Employee

Program Remittance Report Number 0127 Institutional Claims" setting forth in detail the

particulars of plaintiff's claim. Amended Complaint, ¶ 12; and Exhibit 4 hereto. In that

document, defendant stated that plaintiff's claim was "currently being reviewed" and that "[w]e

need all medical records that support the services on the claim." Id., Exhibit 4 at 3. Defendant

made this statement to Ashley even though all such records had previously been provided to

defendant by Ashley. Amended Complaint, ¶¶ 10, 11, and 12.

4

On October 17, 2006, plaintiff contacted defendant directly and spoke with defendant's member service representative, Chris Fuller. Amended Complaint, ¶ 14. Mr. Fuller advised plaintiff that plaintiff's claim remained open pending submission or re-submission of medical records supporting plaintiff's claim. Id. Mr. Fuller further advised plaintiff to send additional copies of all records supporting plaintiff's claim to defendant. Id.

As advised by Mr. Fuller, by certified letter dated and mailed on October 19, 2006, plaintiff submitted to defendant additional copies of the records and information supporting plaintiff's claim. Amended Complaint, ¶ 15, and Exhibit 5 hereto.[2] That letter and the included records and information were received by defendant on October 23, 2006. Amended Complaint, ¶ 15.

By a letter dated March 6, 2007, defendant informed plaintiff that defendant refused to pay plaintiff's claim. Amended Complaint, ¶ 16, and Exhibit 6 hereto. The March 6, 2007, letter made no mention of Ashley's September 20, 2004, submission to defendant of plaintiff's medical records and information supporting plaintiff's claim; defendant's April 4, 2005, written communication to Ashley requesting all medical records supporting plaintiff's claim; or plaintiff's October 17, 2006, letter to defendant resubmitting plaintiff's medical records and information supporting his claim. Exhibit 6. Rather, defendant's March 6, 2007, letter stated as the only basis for refusing plaintiff's claim:

> Based on the information reviewed, [defendant] is unable to authorize 28 day(s) of Adult Residential Treatment from 06/24/04

---

[2] Exhibit 5 is plaintiff's October 19, 2006, letter but does not include the records and information that were submitted with the letter inasmuch as the records and information are voluminous and not necessary for the resolution of the present motion. The records and information can, however, be submitted if the court so desires.

5

to 07/22/04 due to the following reason(s): This request did not meet the timeframe requirements. The member had (6) months from the date of the expedited letter[3] to request a **Member Reconsideration**. The Facility had exhausted their appeals prior to the letter dated 9/20/04. If a letter from the member had accompanied the request dated 9/20/04 the appeal could have been granted.

Exhibit 6 at 1 (emphasis in original); Amended Complaint ¶ 17.   The letter went on to inform

plaintiff:

The member may request a reconsideration of the above determination. The member may designate a representative of his/her choice to request a reconsideration on his/her behalf. Reconsideration rights include the right to submit additional records or information. In addition, you may send a written statement relating to the requested care and how you believe it should be covered under the plan. You can request a reconsideration, verbally or in writing, within (6) months of your receipt of this letter.

....

If services have been provided, a post service reconsideration review will be conducted within 30 calendar days from our receipt of the request.

In order to thoroughly review your reconsideration request, [defendant] requests that information be submitted which supports and/or documents:

....

Any records or document that would be helpful to your appeal....

Exhibit 6 at 2-3; Amended Complaint, ¶ 17.

---

[3] Though defendant did not explain what it meant by the term "expedited letter," it is apparently a reference to the June 28, 2004, letter (Exhibit 1) refusing to authorize payment for plaintiff's claim.

6

As instructed by defendant's March 6, 2007, letter, plaintiff submitted a request for reconsideration of defendant's determination. Amended Complaint, ¶ 18. That request was made by certified letter dated and mailed March 14, 2007, within 8 days of defendant's letter refusing plaintiff's claim, included a detailed explanation of why plaintiff's treatment was covered under the Service Benefit Plan, and enclosed, yet again, all medical records and information supporting plaintiff's claim. Id. and Exhibit 7 hereto.[4] Defendant received plaintiff's March 14, 2007, letter and the enclosed records and information on March 15, 2007. Amended Complaint, ¶ 18. As of the date of the filing of plaintiff's Amended Complaint, August 2, 2007, some 140 days after defendant's receipt of plaintiff's request for reconsideration, plaintiff had received no communication from defendant regarding the requested reconsideration. Amended Complaint, ¶ 19.

## ARGUMENT

Defendant grounds its motion to dismiss solely upon a preemption provision, 5 U.S.C. § 8902(m)(1), contained within the Federal Employee Health Benefits Act ("FEHBA" or "the Act"), 5 U.S.C. §§ 8901-8914. In so moving, defendant does not discuss or even mention any of the facts set forth above, except for a passing reference to the fact that plaintiff has sought reconsideration of defendants March 6, 2007, refusal to consider the merits of plaintiff's claim. Def. Mem. at 6. And no wonder, because the facts show that defendant has, by depriving

---

[4] Exhibit 7 is plaintiff's March 14, 2007, letter but, like Exhibit 5, does not include the records and information that were submitted with the letter inasmuch as the records and information are voluminous and not necessary for the resolution of the present motion. Again, the records and information can be submitted if the court so desires.

plaintiff of access to the FEHBA system, opted out of the system of which the preemption provision is only one part.

Defendant acknowledges that the purpose of FEHBA, as emphasized by Congress in adopting the preemption provision, is "to strengthen the ability of national plans to offer uniform benefits and rates to enrollees ...." Def. Mem. at 5 (quoting H.R. Rep. No. 105-374 (1997) at 9). Thus, even in preempting certain kinds of litigation, the focus of FEHBA remains on providing benefits to federal employees such as plaintiff. Congress' concern was with uniformity and, therefore, it adopted the present preemption provision in order "to strengthen the case for trying FEHB program claims disputes in Federal courts rather than State courts." H.R. Rep. No. 105-374 at 9. Admittedly, FEHBA contemplates that such disputes will usually proceed through a uniform administrative process before they reach the Federal courts; but when, as here, a carrier completely frustrates the employee's access to that process, then the only recourse is directly to the courts.[5]

---

[5] Plaintiff initially commenced this action in the Superior Court of the District of Columbia, a court of general jurisdiction, because it is not clear whether claims such as those presented in this case raise a question of federal law. In Empire Healthchoice Assurance, Inc. v. McVeigh, 126 S.Ct. 2121, 2135 (2006), the Supreme Court recently held that "[i]f contract-based reimbursement claims are not covered by FEHBA's preemption provision, then federal jurisdiction clearly does not exist. But even if FEHBA's preemption provision reaches contract-based reimbursement claims, that provision is not sufficiently broad to confer federal jurisdiction." It is plaintiff's position that, for the reasons explained herein, FEHBA's preemption provision does not apply to the present case. Nonetheless, because Empire Healthchoice was decided in a context different from that presented here, plaintiff does not oppose this court's deciding whether the preemption provision applies to this case. Assuming that this court decides, correctly, that plaintiff's claims here are not preempted under FEHBA, it will be then be necessary to determine whether the case should be remanded to the Superior Court.

8

The preemption provision is not such an all-encompassing bar to direct access to the courts as defendant would have this court believe. Simply because a claim grows out of a contract of insurance issued under FEHBA, that claim is not perforce preempted. In Empire Healthchoice Assurance, Inc. v. McVeigh, 126 S.Ct. at 1235-36, the Court recognized that "Section 8902(m)(1) is a puzzling measure, open to more than one construction" and that "given that § 8902(m)(1) declares no federal law preemptive, but instead, terms of an OPM-BCBSA [Office of Personnel Management-Blue Cross Blue Shield Association] negotiated contract, a modest reading of the provision is in order." Defendant somehow missed that point when, although it acknowledged that "the Service Benefit Plan [under which plaintiff is insured] is formed by federal government contract between OPM and the Blue Cross and Blue Shield Association," Def. Mem. at 2, it suggested to this court that Empire Healthchoice mandates the conclusion that plaintiff's present case is preempted, Def. Mem. at 5.

Defendant makes much of a line of cases in which "[c]ourts in this Circuit and elsewhere have held repeatedly that FEHBA preempts all state law claims relating to the payment of benefits by a FEHBA plan." Def. Mem. At 6. Plaintiff does not dispute the holdings of those cases in the circumstances presented to those courts. Plaintiff does question, however, defendant's failure to inform the court of cases reaching the opposite conclusion. See Howard v. Group Hosp. Serv., 739 F.2d 1508 (10th Cir. 1984); Mooney v. Blue Cross of W. Pa., 678 F. Supp. 565, 567 (W.D. Pa. 1988); Eidler v. Blue Cross Blue Shield United of Wisc., 671 F. Supp. 1213, 1216-17 (E.D. Wis. 1987); Lopez v. Blue Cross of La., 386 So. 2d 697, 699 (La. Ct. App. 1980), rev'd in part on other grounds, 397 So. 2d 1343 (La. 1981). Defendant's failure to mention those cases is even more curious in light of defendant's citation of a decision by the only

9

"[c]ourt[] in this Circuit" to have addressed the preemption issue. <u>Robinson v. Humana Group Health Plan, Inc.</u>, No. 95-1233 (GK), 1996 U.S. Dist. LEXIS 16578 (D.D.C. Nov. 4, 1996); Def. Mem. at 6. That court itself found it appropriate to acknowledge and cite the decisions contrary to its holding. <u>Robinson v. Humana</u>, 1996 U.S. Dist. LEXIS 16578 at *15-16.

Neither may defendant's omission be excused by the fact that the contrary cases were decided under a previous version of FEHBA's preemption provision. Indeed, the very court in this Circuit cited by defendant, Def. Mem. at 6, decided the case before it under that previous version of the preemption provision. <u>Robinson v. Humana</u>, 1996 U.S. Dist. LEXIS at *14-15. And that court noted that the previous version of the preemption provision, just as the present version, "was enacted to ensure that policy benefits available to federal employees would be uniform." <u>Id.</u> at *16. Integral to the "policy benefits" intended by Congress to "available to federal employees" is the administrative process established by FEHBA. Therefore, plaintiff need not rely here upon what the <u>Robinson</u> court called the "minority view," <u>id.</u>, because even the cases reflecting the majority view were not decided under circumstances, like those presented here, in which the insurance carrier engaged in behavior that denied a federal employee access to that process.

It is almost unnecessary to look any further than defendant's most recent action or, better put, inaction with respect to plaintiff's claim to conclude that defendant has removed itself from whatever protection might be afforded by the preemption provision. Defendant pays lip service to an "administrative remedy at the agency [OPM] for those who believe that the carrier has wrongfully denied benefits." Def. Mem. at 3, citing 5 C.F.R. § 890.105, 890.107(d)(1). However, as defendant acknowledges, that administrative remedy is available to a claimant, such

10

as plaintiff, only "after exhaustion of all internal appeals (including a right to reconsideration) with the carrier." Def. Mem. at 3-4.

Here, defendant purported to extend to plaintiff the "right to reconsideration" of defendant's March 6, 2007, determination that plaintiff's claim was untimely. In its letter conveying that determination, defendant informed plaintiff that, if he requested reconsideration, "reconsideration review will be conducted within 30 calendar days from our [defendant's] receipt of the request." Exhibit 6 at 3. Indeed, the Statement of Benefits issued by defendant for 2004, the year in which plaintiff received the treatment at issue, imposes on defendant the following obligation when a claimant such a plaintiff requests reconsideration of an adverse determination:

> We have 30 days from the date we receive your request to:
>
> (a) Pay the claim ...; or
>
> (b) Write to you and maintain our denial ...; or
>
> (c) Ask you or your provider for more information.

Blue Cross and Blue Shield Service Benefit Plan 2004 at 101.[6]

Yet defendant's acknowledgment of its obligation was no more than pretense. Taking defendant at its word, plaintiff requested, in writing, reconsideration of the March 6, 2007, adverse determination. Amended Complaint, ¶ 18, and Exhibit 7 hereto. Plaintiff's request was made by certified letter dated and mailed March 14, 2007. Id. Defendant received that request on March 15, 2007. Amended Complaint, ¶ 18. Thirty days from March 15, 2007, expired on

---

[6] The 2004 Statement of Benefits is included within Exhibit D to defendant's Notice of Removal. Pages 101-02 of that Statement, a portion of which is quoted above, is captioned "The disputed claims process." Because of the importance of that process to the motion presently before the court, pages 101-02 of the Statement are also submitted as Exhibit 8 hereto.

11

April 14, 2007. As of August 2, 2007, the date of filing of plaintiff's Amended Complaint in this

action and 140 days after defendant's receipt of plaintiff's request, defendant had taken none of

the actions which it was required to take. Amended Complaint, ¶ 19.[7]  Perhaps defendant's

unexplained failure to meet its obligation with respect to plaintiff's request for reconsideration

might be excused as the result of competing demands or insufficient, or even incompetent, staff

if it did not so clearly exemplify a pattern of delay and obfuscation leading to the more than

reasonable inference that defendant has always intended to deprive plaintiff of the uniform

treatment to which he was entitled under the FEHBA system.

Defendant's initial determination to refuse payment for plaintiff's treatment was

communicated to <u>Ashley</u> in a letter dated June 28, 2004, and received by Ashley on July 7, 2004.

Amended Complaint, ¶ 7, and Exhibit 1 at 1. Eighty-four days later, by letters dated September

20, 2004, and received by defendant on September 22, 2004, Ashley appealed that initial

determination on plaintiff's behalf and provided defendant with medical records and information

supporting plaintiff's claim. Amended Complaint, ¶¶ 9-11, and Exhibits 2 and 3. Ashley's

"Appeal Letter" states unequivocally that it was "following the appeals procedures through to

continue our role as both managers <u>and patient advocates</u>." Exhibit 2 (emphasis added). Yet in

its March 6, 2007, letter to plaintiff, defendant asserts, without explanation or support, that "[t]he

Facility had exhausted their appeals prior to the letter dated 9/20/07." Exhibit 6 at 1. Whatever

---

[7] Defendant's assertion that plaintiff did not pursue his claim in a timely manner, Exhibit 6 at 1, is ironic in light of defendant's exceeding the time allowed for action on defendant's request for reconsideration by more than fourfold by the time plaintiff filed his Amended Complaint. For the court's information only, and not necessary as support for this opposition to defendant's motion to dismiss, plaintiff advises the court that, as of the date of filing of this opposition, plaintiff still has not received any response to his request for reconsideration.

defendant may have meant by its reference to "[t]he Facility ha[ving] exhausted their appeals," it is plain that it was plaintiff's appeal that was being asserted in the September 20, 2004, "Appeal Letter." What is also plain is that defendant was manufacturing non-existent requirements to block, retroactively, plaintiff's access to the FEHBA system.

Despite its unsupported assertion that Ashley had exhausted its appeals,[8] defendant could not escape plaintiff's right to appeal defendant's initial determination at any time within six months of that determination. See Exhibit 6 at 1 ("The member had (6) months from the date of the expedited letter to request a **Member Reconsideration**.") (emphasis in original). An appeal within 84 days of the initial determination satisfied that requirement. So, in order to keep plaintiff out of the FEHBA system, defendant had to invent a requirement nowhere present in plaintiff's coverage, namely that the appeal had to come "in a letter from the member." Exhibit 6 at 1.

Defendant's own "disputed claims process" puts the lie to this invented requirement. While the process does place a six-month deadline on seeking reconsideration by the carrier of adverse determinations, Exhibit 8 at 101, it nowhere precludes a treating facility seeking such reconsideration on a claimant's behalf. Rather, the process makes clear that the only appeal that must be made personally by the claimant is an appeal to OPM. Exhibit 8 at 102. The term "Member Reconsideration," so emphasized by defendant, does not even appear in the disputed claims process.

---

[8] Defendant nowhere mentions the outcome of Ashley's phantom appeal, and plaintiff has reviewed all the communications between Ashley and defendant to find any evidence of such an appeal, by Ashley on its own behalf, to no avail.

It was not until defendant was pushed to the wall in its efforts to block plaintiff's access to the FEHBA system, that it invented the "Member Reconsideration" requirement. As already noted, defendant received the appeal by Ashley on plaintiff's behalf on September 22, 2004. Defendant did not then reject that appeal either as untimely or as having been submitted improperly by Ashley rather than by plaintiff. Instead, defendant repeatedly advised Ashley that plaintiff's claim, and his appeal of the initial determination denying it, remained pending. Amended Complaint, ¶ 13. Defendant confirmed that fact in writing, and further acknowledged its continuing acceptance of Ashley's acting in plaintiff's behalf, more than six months after defendant's receipt of the appeal.

On April 4, 2005, defendant wrote to Ashley, stating that plaintiff's "claim is currently being reviewed" and requesting "all medical records that support the services on the claim," Amended Complaint, ¶ 12, and Exhibit 6 at 3, albeit that those records had been provided to defendant by Ashley six months earlier. This request by defendant, though belated, was squarely within the disputed claims process and is perhaps the clearest proof that defendant's later assertion that plaintiff did not act in a timely manner to pursue his appeal was nothing more than a pretext to avoid the FEHBA system.[9]

Even after April 4, 2005, defendant continued to communicate with Ashley as plaintiff's representative in the disputed claims process. Amended Complaint, ¶ 13. In all of those

---

[9] Defendant received the appeal of its initial refusal to authorize payment for plaintiff's treatment on September 22, 2004, Amended Complaint, ¶ 11; however it was not until April 4, 2005, that defendant requested more information to support the appeal. Thus, defendant delayed for 194 days taking even one of the actions that its disputed claims process required it to take within 30 days. See Exhibit 8 at 101 ("We have 30 days from the date we receive your request to ... [a]sk you or your provider for more information.").

communications, defendant repeated that plaintiff's claim and appeal remained pending. Id.

Finally, frustrated with defendant's lengthy delay, plaintiff contacted defendant directly. On

October 17, 2006, plaintiff spoke with defendant's member service representation Chris Fuller.

Amended Complaint, ¶ 14. Mr. Fuller advised plaintiff that plaintiff's claim remained open

pending submission, or re-submission, of medical records supporting plaintiff's claim and told

plaintiff to send additional copies of all records supporting his claim to defendant. Id. Plaintiff

followed those instructions and, by certified letter dated and mailed October 19, 2006, submitted

to defendant copies of all records and information supporting plaintiff's claim. Id., ¶ 15, and

Exhibit 5. Defendant received the letter and records and information on October 23, 2006.

Though it is not possible to know without the benefit of discovery, it is reasonable to

infer that, faced with plaintiff's October 19, 2006, letter and yet another set of the records and

information supporting plaintiff's claim, defendant concluded that some action in addition to its

pattern of continued delay would be necessary to keep plaintiff out of the FEHBA system. Of

course, defendant did not totally abandon its delaying tactic. It took almost an additional six

months for defendant to assert, two and a half years after the fact, that plaintiff had not timely

disputed defendant's refusal to authorize payment for plaintiff's treatment. Amended Complaint,

¶ 16, and Exhibit 6.

And so we come full circle to defendant's March 6, 2007, letter. Again, reasonable

inference compels the conclusion that defendant's letter was prompted by plaintiff's October 19,

2006, letter; however, no mention is made of that letter. See Exhibit 6. But that is no inadvertent

oversight. Had defendant acknowledge plaintiff's letter, it would have had to address the facts

set forth in that letter: that at all relevant times Ashley was acting with the authorization and on

behalf of plaintiff; that Ashley sought pre-treatment authorization for plaintiff and, defendant

having refused that authorization, appealed the denial; that no later than September 20, 2004,

Ashley provided defendant with all medical records and information supporting plaintiff's claim

and appeal; that defendant communicated in writing with Ashley, as plaintiff's representative, in

April 2005 and requested information relating to plaintiff's claim; that defendant's claim

remained pending as of October 17, 2006, and defendant's representative Chris Fuller so advised

plaintiff on that date; and that, with plaintiff's letter of October 19, 2006, he provided defendant

with additional copies of all records supporting his claim. See Exhibit 5. It is reasonable to infer

that defendant's March 6, 2007, letter addressed none of those facts because defendant had no

basis to dispute any of them.

Instead, defendant simply asserted that plaintiff waited too long to seek reconsideration of

defendant's initial decision refusing to pay for plaintiff's treatment. And when plaintiff tried to

exercise his right to reconsideration of that assertion, defendant did not satisfy the requirement

that it provide a response within 30 days; it did not provide a response at all. Having left plaintiff

with no recourse but to the courts, and the limitations period fast expiring while defendant

ignored its obligation,[10] defendant effectively consented to this lawsuit.

## CONCLUSION

In sum, defendant has stymied plaintiff's access at every turn to the "uniform" system

envisioned by FEHBA. The administrative process that defendant touts so highly in its motion to

---

[10] Defendant's initial refusal to authorize payment for plaintiff's treatment occurred on
June 28, 2004. Exhibit 1. Inasmuch as all of defendant's actions complained of herein were
taken to perpetuate that refusal while insulating it from review, defendant could argue that the
limitations period for commencing this suit was three-years from June 28, 2004. See D.C. Code
Ann. § 12-301(7), (8) (2001). Plaintiff, therefore, filed his complaint herein on June 27, 2007.

dismiss is meaningless when defendant employees subterfuge and pretext, as it has done here, to deprive a claimant of that process. Defendant has elected to evade and avoid the system of which the preemption provision is merely one part. Defendant cannot now claim the protection of that provision having deprived plaintiff of the concomitant protections that substitute for access to the courts. Defendant's motion to dismiss should be denied.

Respectfully submitted,

GERALD C. KELL (D.C. Bar No. 929125)
1309 P Street, N.W.
Apartment 5
Washington, D.C. 20005
(202) 588-1162

*Pro Se*

17

CERTIFICATE OF SERVICE

I certify that on August 30, 2007, I served a copy of plaintiff's foregoing opposition to

defendants motion to dismiss, and proposed order denying same, upon counsel for defendant by

United States mail addressed to:

>           Anthony F. Shelley
>           Miller & Chevalier Chartered
>           655 15th Street, N.W.
>           Suite 900
>           Washington, D.C. 20005

GERALD C. KELL (D.C. Bar No. 929125)
Plaintiff

18

# EXHIBIT 1

**CareFirst BlueCross BlueShield**
Federal Employee Program
P.O. BOX 801
Owings Mills, Maryland 21117

June 28, 2004





Father Martin's Ashley
Dr. Bernadette Solounias
800 Tydings Lane
Harve de Grace, MD 21078

Re: Gerald Kell
Subscriber #: R24699276
Date of service: 6/24/04

Dear Dr. Bernadette Solounias:

Magellan Behavioral Health (Magellan) has been authorized by CareFirst BlueCross (CareFirst) to administer its Managed Mental Health Program for the Federal Employee Program (FEP) BlueCross BlueShield Service Benefit Plan. As such, we are responsible for reviewing mental health and/or substance abuse treatment to ensure that it is appropriate for payment purposes according to the guidelines of the patient's Federal Employees Health Benefit Program.

This is in response to the provider inquiry received on 6/24/04, in which authorization was requested for Residential Treatment Center Substance (adult) treatment rendered at Father Martin's Ashley for the period beginning 6/24/04.

A Magellan specialist in psychiatry different from the physician involved in the initial decision has reviewed the current record including medication, nursing, social work and physician progress notes and treatment plan provided by Dr. Bernadette Solounias via telephone.   The Telephonic information provided to us was also reviewed by a CareFirst Medical Director.

After the telephone conversation it has been determined that Residential Treatment Center Substance (adult) treatment is considered not medically necessary.  Per the Physician Advisor: "There is no evidence of withdrawal history.  The patient has had no recent treatment.  The patient can be safely and effectively treated at an  Adult intensive outpatient Program."  This denial is based primarily on Magellan Behavioral Health Medical Necessity Review Criteria and the clinical expertise of the physicians reviewing the case.  The care being received is considered to be appropriate for **Adult Substance Intensive Outpatient Program** level of care.

According to the 2004 BlueCross BlueShield Service Benefit Plan brochure on page 112, Medical Necessity is defined as:

1. Appropriate to prevent, diagnose, or treat your condition, illness, or injury;
2. Consistent with standards of good medical practice in the United States;
3. Not primarily for the personal comfort or convenience of the patient, the family, or the provider;
4. Not part of or associated with scholastic education or vocational training of the patient; and
5. In the case of inpatient care, cannot be provided safely on an outpatient basis.

Based on the submitted documentation and the Medical Director's review this Residential Treatment Center Substance (adult) treatment was not medically necessary based on 1 and 5 of the definition above.

The following resources are used by our physician reviewers, in conjunction with clinical judgment, when making their determination regarding room and board services: Magellan Behavioral Health Medical Necessity Review Criteria.

Thank you for your patience during this review process. If you need assistance in the future, your Provider Services representative is available to help you at 800-321-2580.

Sincerely,


Care Management, Magellan Behavioral Health

cc: Father Martin's Ashley
    Gerald Kell

# EXHIBIT 2



# Father Martin's ASHLEY

A Treatment Center for Alcoholism and Chemical Addiction
JCAHO Accredited
All contributions are tax deductible, to the extent allowed by law.

*Father Joseph C. Martin*
*Lora Mae Abraham*
Co-Founders, Emeritus

**Leonard Angus Dahl**
*President and Chief Executive Officer*

## Appeal Letter

September 20, 2004

CareFirst BlueCross BlueShield
Federal Customer Service
550 12th Street SW
Washington, DC 20065

**RE: KELL, GERALD # 19455**
**ID# R24699276**

To Whom It May Concern:

Please find the enclosed medical records for Gerald Kell. Gerald was admitted to Ashley on 6/24/04. The purpose of this retrospective appeal is to look at days previously denied from 6/24/04 to 7/22/04. Please see specific notes for the days in question. We are following the appeals procedures through to continue our role as both managers and patient advocates.

Respectfully yours,

*Bernadette A. Soumias, M.D.*
Bernadette Solounias, M.D.
Medical Director

CONFIDENTIAL

FEDERAL LAW FORBIDS FUTURE DISCLOSURE OF THIS INFORMATION FROM CONFIDENTIAL ALCOHOL AND DRUG ABUSE PATIENTS RECORDS WITHOUT SPECIFIC WRITTEN CONSENT OF THE PATIENT.

# EXHIBIT 3



# Father Martin's ASHLEY

A Treatment Center for Alcoholism and Chemical Addiction
JCAHO Accredited
All contributions are tax deductible, to the extent allowed by law.

**Leonard Angus Dahl**
*President and Chief Executive Officer*

*Father Joseph C. Martin*
*Lora Mae Abraham*
Co-Founders, Emeritus

September 20, 2004

CareFirst BlueCross BlueShield
Federal Customer Service
550 12th Street, SW
Washington, DC 20065

RE: KELL, GERALD # 19455
**ID# R24699276**

Dear Sir or Madam:

Enclosed is the information and / or photographs of medical records requested for the purposes and circumstances expressly authorized by the above named patient.

This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (42 CFR Part 2) prohibit you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is not sufficient for this purpose.

Sincerely,

*Ms. Peyton Niswonger*
Medical Records

CONFIDENTIAL

FEDERAL LAW FORBIDS FUTURE DISCLOSURE
OF THIS INFORMATION FROM CONFIDENTIAL
ALCOHOL AND DRUG ABUSE PATIENTS RECORDS
WITHOUT SPECIFIC WRITTEN CONSENT OF
THE PATIENT.

Enclosure: medical records per request and consent

PO Box 240 ● 800 Tydings Lane ● Havre de Grace Maryland 21078
410 273 6600 ● 800 799 HOPE (4673) ● Fax 410 272 5617
www.fathermartinsashley.org

# EXHIBIT 4

00480

FEDERAL EMPLOYEE PROGRAM                                    PAGE    1

REMITTANCE REPORT NUMBER                  PROCESS DATE   04/04/2005
0127                                      PREVIOUS REMIT 03/29/2005
INSTITUTIONAL CLAIMS

ASHLEY INC                        NE70000
PO BOX 240
HVRE DE GRACE MD  21078-0240




RECEIVED
APR 18 2005
By_____

| IS POS PROC CODE | FROM AND TO SERVICE DATES | PROVIDER CHARGES | NONCOVERED CHARGES | COINS COPAY | DED | COB | NEGOTIATED SAVINGS | PREV AMT PD | AMOUNT PAID | REASON CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| **IENT NAME: KELL, GERALD** | | | | | | ACC #: 19455 | | | | |
| TRANS ID: 33177215657 | | | ID #: R24699276 | CLAIM #: 5073560062F | | | SUB LIABILITY: | | | 0.00 |
| 2 | 06242004 07072004 | 700.00 | 700.00 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 700.00 | 700.00 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 700.00 | 700.00 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 06242004 07072004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| | CLAIM/TRANS ID TOTAL | 8497.60 | 8497.60 | | | | | | .00 | |
| **IENT NAME: KELL, GERALD** | | | | | | ACC #: 19455 | | | | |
| TRANS ID: 33177215663 | | | ID #: R24699276 | CLAIM #: 5073560063F | | | SUB LIABILITY: | | | 0.00 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |

00481                          FEDERAL EMPLOYEE PROGRAM                        PAGE    2

                          REMITTANCE REPORT NUMBER              PROCESS DATE    04/04/2005
                                    0127                        PREVIOUS REMIT 03/29/2005
                          INSTITUTIONAL CLAIMS


        ASHLEY INC                    NE70000
        P. O. BOX 240
        HARVE DE GRACE        MD 21078


| S POS PROC CODE | FROM AND TO SERVICE DATES | PROVIDER CHARGES | NONCOVERED CHARGES | COINS COPAY | DED | COB | NEGOTIATED SAVINGS | PREV AMT PD | AMOUNT PAID | REASON CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| IENT NAME: KELL, GERALD | | | | | | | ACC #: 19455 | | | |
| | TRANS ID: 33177215663 | | ID #: R24699276 | | CLAIM #: 5073560063F | | | SUB LIABILITY: | | 0.00 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| 2 | 07082004 07212004 | 581.60 | 581.60 | | | | | | .00 | 565 |
| | CLAIM/TRANS ID TOTAL | 8142.40 | 8142.40 | | | | | | .00 | |
| PATIENT | | 16640.00 | 16640.00 | | | | | | .00 | |

)00482

FEDERAL EMPLOYEE PROGRAM                           PAGE    3

REMITTANCE REPORT NUMBER              PROCESS DATE    04/04/2005
0127                                  PREVIOUS REMIT  03/29/2005
INSTITUTIONAL CLAIMS


ASHLEY INC                    NE70000
P. O. BOX 240
HARVE DE GRACE        MD 21078


| OS POS PROC<br>CODE | FROM AND TO<br>SERVICE DATES | PROVIDER<br>CHARGES | NONCOVERED<br>CHARGES | COINS<br>COPAY | DED | COB | NEGOTIATED<br>SAVINGS | PREV<br>AMT PD | AMOUNT<br>PAID | REASON<br>CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| PATIENT |  | .00 |  |  |  |  |  |  | .00 |  |
| TPATIENT |  | 16640.00 | 16640.00 |  |  |  |  |  | .00 |  |
| MMARY |  | 16640.00 | 16640.00 |  |  |  |  |  | .00 |  |

LINE COUNT:      0
CLAIM COUNT:    28
0
0


ASON CODE DESCRIPTIONS
----------------------

5 - YOUR CLAIM IS CURRENTLY BEING REVIEWED.  TO CORRECTLY PROVIDE BENEFITS UNDER
    YOUR COVERAGE FOR THESE CHARGES, WE NEED ALL MEDICAL RECORDS THAT SUPPORT THE
    SERVICES ON THE CLAIM ALONG WITH A COPY OF THIS EOB.  PLEASE RETURN THIS
    INFORMATION TO US AT THE ADDRESS SHOWN ON THE EOB.

# EXHIBIT 5

1309 P Street, N.W.
Apartment 5
Washington, DC 20005
(202) 588-1162 (Home)
(202) 514-1586 (Office)
(202) 213-1691 (Cell)

October 19, 2006

CareFirst BlueCross BlueShield
P.O. Box 811
Owings Mills, MD 21117

    Re:    ID# R24699276; Claim Numbers 5073560062F, 5073560063F

Dear Sir or Madam:

I am writing regarding the above-referenced claims for inpatient treatment for alcoholism at Father Martin's Ashley (Ashley) from June 24, 2004, through July 22, 2004. At the time of treatment and thereafter, I authorized Ashley to pursue these claims on my behalf; however, I am writing directly to you at the suggestion of your member services representative, Chris Fuller, with whom I spoke on October 17, 2006. I contacted your offices on October 17 in an effort to determine why, despite the passage of more than two years, there has been no final, appealable if necessary, decision on my claims.

Ashley submitted an initial claim on my behalf sometime shortly after my admission to that facility in June 2004, and you denied that claim by letter (copy enclosed) dated June 28, 2004. Apparently, within less than six days of my medically recommended admission to Ashley following an eight-day period of hospitalization for various conditions related to my alcoholism, a doctor on your staff who had not communicated with me, my doctors, or Ashley determined that my treatment at Ashley, though barely begun, was not medically necessary.

Following completion of my treatment at Ashley, Ashley submitted to you, by letters (copies enclosed) dated September 20, 2004, an appeal of the June 28 denial. According to Ashley's letters, you were provided with my "medical records" and "specific notes for the days in question." In my repeated contacts with Ashley in the ensuing two years, I have been informed that, notwithstanding their efforts on my behalf, no decision has been forthcoming from you. Mr. Fuller advised me yesterday that a notice was issued by you to Ashley in April 2005 requesting my medical records, despite the apparent earlier submission of those records to you in September 2004. Mr. Fuller further informed me that my claims remain open pending (re)submission of my medical records.

While I have no reason to believe that you have not been provided with all records necessary to the processing and payment of my claims, I am enclosing with this letter copies of all of the records I have related to my treatment at Ashley as well as all of the records from my inpatient treatment at George Washington University Hospital in Washington, DC, from June 16, 2004, through June 24, 2004, which treatment immediately preceded and was the immediate predicate for my admission to and treatment at Ashley.

Please advise both me and Ashley if you require any additional information to complete the processing of and a decision on my claims. You may contact me at the address and phone numbers set forth above.

Sincerely,

Gerald C. Kell

cc:    Father Martin's Ashley
       Attn: Vicky Pennington

2

# EXHIBIT 6

CareFirst BlueCross BlueShield
**Federal Employee Program**
10455 Mill Run Circle
Owings Mills, MD 21117-5559

March 6, 2007



**BlueCross
BlueShield**

**Federal Employee Program**

**RE:** Gerald Kell
**DOB:** 08/12/46
**ID#:** R24699276
**Case:** 2004062506000094
**Provider:** Dr. Bernadette Solounias
**Facility:** Father Martin's Ashley
**Admit Date:** 06/24/04 to 07/22/04

Gerald Kell
1309 P. Street, NW
Apt. 5
Washington, DC 20005

Dear Gerald Kell:

Magellan Behavioral Health, a subsidiary of Magellan Health Services (Magellan) has been authorized by CareFirst BlueCross BlueShield and BlueChoice (CareFirst) to administer its Managed Mental Health Program for the Federal Employee Program (FEP) BlueCross BlueShield Service Benefit Plan. As such, we are responsible for reviewing mental health and/or substance abuse treatment to ensure that it is appropriate for payment purposes according to the guidelines of your Federal Employees Health Benefit Program.

We recently conducted a review for Adult Residential Substance treatment for the above-named member with the provider and/or facility.

Based on the information reviewed, Magellan is unable to authorize 28 day(s) of Adult Residential Treatment from 06/24/04 to 07/22/04 due to the following reason(s): This request did not meet the timeframe requirements. The member had (6) months from the date of the expedited letter to request a **Member Reconsideration**. The Facility had exhausted their appeals prior to the letter dated 9/20/04. If a letter from the member had accompanied the request dated 9/20/04 the appeal could have been granted.

Please review your benefit plan description for more information and details.

If Magellan relied on any internal rule, guideline, or protocol in making this determination it will be available to the member free of charge, upon request.

® Registered trademark of the Blue Cross and Blue Shield Association
CareFirst BlueCross BlueShield is an Independent license of the Blue Cross and Blue Shield Association
CareFirst is a registered trademark of CareFirst of Maryland, Inc.
Admin Initial Non-Authorization CF FEP Indemnity

This determination has been made for benefit and coverage purposes; it cannot supersede the professional judgment of the treating provider. In all situations, the provider must use his/her professional judgment to provide care believed to be in the best interest of the member. Final decisions regarding claims payment are based on eligibility, benefits, and coverage at the time services were rendered.

The treating provider has been notified of this determination. Please be aware that this determination may result in non-payment of the health care service.

Please be aware that the standard contract for CareFirst network providers and facilities prohibits the provider from billing the member for services where benefits have not been authorized by Magellan unless the member (or guardian):

1. Understood that the benefits for the services were not certified, and
2. Signed an agreement to assume responsibility for these charges.

The member may request a reconsideration of the above determination. The member may designate a representative of his/her choice to request a reconsideration on his/her behalf. Reconsideration rights include the right to submit additional records or information. In addition, you may send a written statement relating to the requested care and how you believe it should be covered under the plan. You can request a reconsideration, verbally or in writing, within six (6) months of your receipt of this letter.

Depending on where your provider is located, send written requests for reconsideration to:

| **DC, VA, Montgomery Co. Md and** | **Maryland Providers** |
|---|---|
| **Prince Georges Co., Md Providers** | **CareFirst BlueCross BlueShield** |
| **CareFirst BlueCross BlueShield** | **Federal Customer Service** |
| **Federal Customer Service** | **P.O. Box 811** |
| **840 First Street, N.E.** | **TBP-05** |
| **Washington, DC 20002** | **Owings Mills, MD 21117** |

If the member's treatment is urgent or ongoing, a pre-service reconsideration will be conducted telephonically. An expedited reconsideration process is available on the above non-authorized medical request if it would greatly increase the risk to the member's health to handle the reconsideration within the standard reconsideration timeframe. You may initiate the expedited reconsideration by contacting Magellan at 1-800-359-6671 (between the hours of 8:30 am and 5:00 pm) or 1-800-245-7013 (between the hours of 5:00 pm and 8:30 am).

The clinical urgency of a reconsideration will be determined at the time of the reconsideration request. Reconsideration decisions are rendered based on the following types of reviews:

- If the member's condition is urgent, an urgent reconsideration review will be conducted within 24 hours, from our receipt of the request. This review is conducted telephonically.

**or**
- If the member's condition is not urgent and services have not been provided, a pre-service reconsideration review will be conducted within 15 calendar days from our receipt of the request.
**or**
- If services have been provided, a post service reconsideration review will be conducted within 30 calendar days from our receipt of the request.

In order to thoroughly review your reconsideration request, CareFirst requests that information be submitted which supports and/or documents:

☐ admitting face sheet                          ☐ physician's discharge summary

☐ emergency room report                       ☐ laboratory results

☐ medical history and physical examination    ☐ psychosocial history

☐ psychiatric evaluation                       ☐ consultations

☐ chemical dependency assessment              ☐ medication administration sheets

☐ nursing assessment                           ☐ results of other tests and procedures

☐ physician order sheets                       ☐ other professional assessments / evaluations

☐ vital signs monitoring sheets               ☐ progress notes

☐ treatment plan / after care plan            ☐ Other: [specify]

☒ any records or documents that would be helpful to your appeal

In addition, the treating provider/facility may request an inquiry regarding this determination. Please contact CareFirst BlueCross BlueShield Federal Customer Service at the phone number on the back of your membership card in order to begin this inquiry process.

Information regarding the patient's reconsideration rights may also be found in documentation such as the policy, plan certificate, enrollment materials, or other evidence of coverage.

Please refer to the disputed claims process described in the FEP Service Benefit Plan booklet. You may also contact CareFirst BlueCross BlueShield Federal Customer Service at the phone number on the back of your membership card for more information.

If you have any questions regarding this information, please contact Magellan at 1-800-359-6671.

Sincerely,


Care Manager

CC:
Member : Gerald Kell
Attending Physician/Provider: Bernadett Solounias
Facility Utilization Management Department: Father Martin's Ashley

# EXHIBIT 7

1309 P Street, N.W.
Apartment 5
Washington, DC 20005
(202) 588-1162 (Home)
(202) 514-1586 (Office)
(202) 213-1691 (Cell)


March 14, 2007


CareFirst BlueCross BlueShield
Federal Customer Service
P.O. Box 811
TBP-05
Owings Mills, MD 21117

> Re:   Gerald Kell
> DOB:  8/12/46
> ID#:   R24699276
> Case:   2004062506000094

Dear Sir or Madam:

I am writing in response to, and to request reconsideration of, the determination contained in your unsigned letter dated March 6, 2007 (hereinafter "your letter"). Your letter states that you "recently conducted a review for Adult Residential Substance treatment" which I received at Father Martin's Ashley (hereinafter "Ashley") during the period of June 24, 2004, to July 22, 2004. I assume, although your letter does not so state, that your "recent" review was in response to my letter to you of October 16, 2006, and the materials submitted therewith. (For your convenience, and so that you may have immediately at hand all of the materials discussed below, I am enclosing a copy of my October 16, 2006, letter and its related materials.)

Your letter further states that you are "unable to authorize" my treatment and asserts, as the basis for that determination, the following:

> This request did not meet the timeframe requirements. The member had (6) months from the date of the expedited letter to request a **Member Reconsideration**. The Facility had exhausted their appeals prior to the letter dated 9/20/04. If a letter from the member had accompanied the request dated 9/20/04 the appeal could have been granted.

Your determination is entirely at odds with the facts set forth below. The determination should, therefore, be rescinded, and my claim for reimbursement for the cost of my treatment at Ashley

should be paid in accordance with the terms of my policy.

As your letter acknowledges, I began my treatment at Ashley on June 24, 2004. Within four days of my admission to Ashley, and apparently either without a review of my complete medical records or in disregard thereof (see below), you sent a letter dated June 28, 2004, to Ashley refusing to authorize my treatment there. Although your letter is opaque on this point, I presume that this June 28, 2004, letter is the "expedited letter" referenced in the paragraph of your letter quoted above.

As your letter further acknowledges, I did not complete my course of treatment at Ashley until July 22, 2004. Following completion of my treatment at Ashley and determination of the total charges for that treatment, on September 20, 2004, Ashley sent to you two letters. One of those letters was captioned "**Appeal Letter**" and stated, "The purpose of this retrospective appeal is to look at days previously denied from 6/24/04 to 7/22/04." The letter concluded, as I had authorized, "We [Ashley] are following the appeals procedure through to continue our role as both managers and patient advocates." In the other letter, Ashley advised you, "Enclosed is the information and/or photographs of medical records requested for the purposes and circumstances expressly authorized by the above-named patient." The "above-named patient" was me. Your determination, quoted above, acknowledges your receipt of this appeal by Ashley on my behalf, and United Parcel Service tracking records confirm that the appeal was delivered to you on September 22, 2004, at 10:06 a.m. Reference to a calendar for the year 2004 establishes that both September 20 and September 22, 2004, were less than six months from June 28, 2004, the date of the "expedited letter".

At no time, prior to your letter to me of March 6, 2007, did you so much as suggest that Ashley's "Appeal Letter" was in any way insufficient to invoke my right to review of your June 28, 2004, refusal to authorize my treatment at Ashley. Indeed, in April 2005, more than nine months after the date of the "expedited letter," you communicated with Ashley, but not with me, by means of a print-out of Ashley's charges for my treatment and, in a footnote on page 3 of that print-out, stated:

> Your claim is currently being reviewed. To correctly provide benefits under your coverage for these charges, we need all medical records that support the services on the claim along with a copy of this EOB. Please return this information to us at the address shown on the EOB.

That communication is, at best confusing, in that it was addressed only to Ashley and not to me, though it appears to have been referring to my "coverage," and it was sent to Ashley without any reference to the medical records supplied to you by Ashley in September 2004 or any suggestion as to how those records were insufficient to process the claim for my treatment at Ashley. A copy of that communication is enclosed.

After more than two years of repeated, fruitless inquiries by Ashley as to the status of my

2

claim, I ultimately, on October 17, 2006, found one responsive person at Blue Cross, Chris Fuller, a member services representative. Mr. Fuller advised me that my claim was open and that I should resubmit to you all medical records relevant to my claim. As advised by Mr. Fuller, I sent you my enclosed letter of October 19, 2006, and supporting materials. After almost six months, you responded with your baseless assertion of March 6, 2007, belied by your own documented actions, that I had failed to meet an appeal deadline more than two years earlier. Thus, you have apparently yet to consider the medical support for my claim, support that was within your knowledge possibly at the time of the "expedited letter" and certainly by the time of Ashley's September 20, 2004, timely appeal on my behalf. I turn now to that support, all of which is detailed in the medical records enclosed herewith and previously submitted to you.

In the "expedited letter" which, like your letter of March 6, 2007, was unsigned, you proffered the following rationale for refusing to authorize my treatment: "Per the Physician Advisor: 'There is no evidence of withdrawal history. The patient has had no recent treatment. The patient can be safely and effectively treated at an Adult intensive outpatient Program.'" This assertion by the anonymous "Physician Advisor" is, of course, nonsense.

For eight days immediately prior to my admission to Ashley, I had been hospitalized for a multitude of physical infirmities, all related to active alcoholism, and was treated for "alcohol withdrawal delirium" by around-the-clock intravenous administration of Librium and Ativan. Indeed, the hospital submitted documented claims for payment for all of my treatment there, and those claims were paid in full by you. Even upon discharge from the hospital, which discharge was directly to inpatient alcoholism treatment at Ashley, it was necessary, as reflected in my hospital records, that I be administered Librium orally to continue to combat alcohol withdrawal. Due to the orthostasis and syncopy resulting from my alcohol abuse, upon discharge I required a wheelchair; and Ashley required, as a condition of my admission to treatment there, that I employ personal certified nursing assistants twenty-four hours a day for the first several days of my treatment to enable my mobility in the wheelchair and protect against further falls and injury.

To suggest, as did the "Physician Advisor" upon whom you relied for your initial refusal to authorize my treatment at Ashley, that under these circumstances outpatient treatment could have any chance of success in treating my acute alcoholism is the height of medical irresponsibility. Your accepting that suggestion was, and continues to be, in direct and willful contravention of your obligation under my policy, as acknowledge in the "expedited letter," to pay for treatment that is:

    1. Appropriate to prevent, diagnose, or treat [the] condition, illness, or injury;
    2. Consistent with standards of good medical practice in the United States;
    3. Not primarily for the personal comfort or convenience of the patient, the family, or the provider;
    4. Not part of or associated with scholastic education or vocational training of the patient; and
    5. In the case of inpatient care, cannot be provided safely on an outpatient basis.

3

For all of the foregoing reasons, you are required to rescind the determination set forth in your letter of March 6, 2007, reverse the decision reached in the "expedited letter," and pay my claim for my treatment at Ashley. Your failure to take these actions will constitute both breach of contract, for which you will be liable to pay the benefits specified in my policy, and bad faith refusal to pay due and owing insurance benefits, for which you will be liable for punitive damages. If I do not receive an unqualified affirmative response to this letter by no later than June 1, 2007, I will institute legal action in the appropriate court to recover for all of your liability.

Sincerely,

Gerald C. Kell

cc: Father Martin's Ashley
    Attn: Vicky Pennington

4

# EXHIBIT 8

# Section 8.  The disputed claims process

Follow this Federal Employees Health Benefits Program disputed claims process if you disagree with our decision on your claim or request for services, drugs, or supplies – including a request for precertification or prior approval:

| Step | Description |
| --- | --- |

**1**   Ask us in writing to reconsider our initial decision.  Write to us at the address shown on your explanation of benefits (EOB) form.  You must:

    (a)  Write to us within 6 months from the date of our decision; and

    (b)  Send your request to us at the address shown on your explanation of benefits (EOB) form for the Local Plan that processed the claim (or, for Prescription drug benefits, our Retail Pharmacy Program or Mail Service Prescription Drug Program); and

    (c)  Include a statement about why you believe our initial decision was wrong, based on specific benefit provisions in this brochure; and

    (d)  Include copies of documents that support your claim, such as physicians' letters, operative reports, bills, medical records, and explanation of benefits (EOB) forms.

**2**   We have 30 days from the date we receive your request to:

    (a)  Pay the claim (or, if applicable, precertify your hospital stay or grant your request for prior approval for a service, drug, or supply); or

    (b)  Write to you and maintain our denial – go to step 4; or

    (c)  Ask you or your provider for more information.  If we ask your provider, we will send you a copy of our request – go to step 3.

**3**   You or your provider must send the information so that we receive it within 60 days of our request.  We will then decide within 30 more days.

If we do not receive the information within 60 days, we will decide within 30 days of the date the information was due.  We will base our decision on the information we already have.

We will write to you with our decision.

**4**   If you do not agree with our decision, you may ask OPM to review it.

You must write to OPM within:

- 90 days after the date of our letter upholding our initial decision; or

- 120 days after you first wrote to us – if we did not answer that request in some way within 30 days; or

- 120 days after we asked for additional information – if we did not send you a decision within 30 days after we received the additional information.

Write to OPM at: United States Office of Personnel Management, Insurance Services Programs, Health Insurance Group 1, 1900 E Street, NW, Washington, DC  20415-3610.

**The disputed claims process** *(continued)*

Send OPM the following information:

- A statement about why you believe our decision was wrong, based on specific benefit provisions in this brochure;

- Copies of documents that support your claim, such as physicians' letters, operative reports, bills, medical records, and explanation of benefits (EOB) forms;

- Copies of all letters you sent to us about the claim;

- Copies of all letters we sent to you about the claim; and

- Your daytime phone number and the best time to call.

*Note:* If you want OPM to review more than one claim, you must clearly identify which documents apply to which claim.

*Note:* You are the only person who has a right to file a disputed claim with OPM. Parties acting as your representative, such as medical providers, must include a copy of your specific written consent with the review request.

*Note:* The above deadlines may be extended if you show that you were unable to meet the deadline because of reasons beyond your control.

**5**    OPM will review your disputed claim request and will use the information it collects from you and us to decide whether our decision is correct. OPM will determine if we correctly applied the terms of our contract when we denied your claim or request for service. OPM will send you a final decision within 60 days. There are no other administrative appeals.

If you do not agree with OPM's decision, your only recourse is to sue. If you decide to sue, you must file the suit against OPM in Federal court by December 31 of the third year after the year in which you received the disputed services, drugs, or supplies or from the year in which you were denied precertification or prior approval. This is the only deadline that may not be extended.

OPM may disclose the information it collects during the review process to support their disputed claims decision. This information will become part of the court record.

You may not sue until you have completed the disputed claims process. Further, Federal law governs your lawsuit, benefits, and payment of benefits. The Federal court will base its review on the record that was before OPM when OPM decided to uphold or overturn our decision. You may recover only the amount of benefits in dispute.

**Note: If you have a serious or life threatening condition** (one that may cause permanent loss of bodily functions or death if not treated as soon as possible), and

(a)  We have not responded yet to your initial claim or request for precertification/prior approval, then call us at the customer service number on the back of your Service Benefit Plan ID card and we will expedite our review; or

(b)  We denied your initial claim or request for precertification/prior approval, then:

- If we expedite our review and maintain our denial, we will inform OPM so that they can give your claim expedited treatment too, or

- You may call OPM's Health Insurance Group 1 at 1-202-606-0727 between 8 a.m. and 5 p.m. eastern time.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RECEIVED

AUG 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| GERALD C. KELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-01402-RJL |
| | ) | |
| CAREFIRST BLUECROSS BLUESHIELD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Upon consideration of defendant's motion to dismiss, plaintiff's opposition thereto, and the whole record in this case, it is ORDERED that the motion is DENIED.

_____
UNITED STATES DISTRICT JUDGE

Dated: _____

PERSONS TO BE SERVED:

Anthony F. Shelley
Miller & Chevalier Chartered
655 15th Street, N.W.
Suite 900
Washington, D.C.  20005
ashelley@milchev.com

Gerald C. Kell
1309 P Street, N.W.
Apartment 5
Washington, D.C.  20005